IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LISA MARIE KERR,

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:20-cv-00190

SHANNON McKAY, et al.,

        Defendants.

**ORDER**

This matter is before the undersigned on Plaintiff's "*Motion for Sanctions against DOH for Spoliation of Evidence, and Against Defendants for Complicity in the Spoliation.*" (ECF No. 123.) The motion has been fully briefed and is now ripe for review. (ECF Nos. 127, 128, 129, 130, 135.) For the reasons set forth herein, Plaintiff's motion is **DENIED**.

**I.    BACKGROUND**

Plaintiff Lisa Marie Kerr ("Plaintiff") brings this civil action for defamation and unlawful discrimination arising from her suspension without pay from her employment as a Social Services Worker II in the Adult Services department of the West Virginia Department of Health and Human Resources ("WVDHHR") between September 5, 2019, and September 18, 2019. (*See* ECF Nos. 30 and 74-1 at 2.) Plaintiff alleges the suspension was based upon her status as a "non-gender-conforming lesbian" and the Defendants' perceived failure of the Plaintiff to "speak, walk, talk and act more femininely." (ECF No. 30 at 2.) Surviving are Plaintiff's claims for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, against

Defendant WVDHHR, as well as defamation claims under West Virginia law against WVDHHR, Defendant Lance Whaley ("Whaley"), Regional Director for District II of the WVDHHR, and Shannon McKay ("McKay"), Community Service Manager of WVDHHR's Lincoln County office (collectively, "Defendants"). (*See* ECF No. 31.)

This matter was referred to the undersigned for pretrial management pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 2.) Accordingly, the undersigned entered a Scheduling Order on January 12, 2021, directing the parties to complete discovery by May 31, 2021. (ECF No. 35.) The parties were further ordered to file dispositive motions by June 23, 2021, with any responses and replies due by July 7, 2021, and July 14, 2021, respectively. (ECF No. 73.)

On May 27, 2021—four days prior to the discovery deadline—Plaintiff issued a subpoena *duces tecum* (the "Subpoena") to the West Virginia Division of Highways ("DOH"), a non-party, requesting production of the following documents:

> Documents in the possession, custody or control of Division of Highways regarding Lisa Kerr, including but not limited to documents regarding:
>
> 1) Consideration of employment, transfer or promotion for Lisa Kerr from a position with DHHR to a position with Division of Highways legal department.
> 2) Review of a proposed multi-salary-classification-level increase for Lisa Kerr.
> 3) Outcome of a review of a proposed multi-salary-classification-level increase for Lisa Kerr.

(ECF No. 85-1 at 4.) The record does not reflect that Plaintiff served a notice and a copy of the Subpoena on Defendants prior to serving DOH. (*See* ECF No. 85-1 at 1.)

Plaintiff's Subpoena required DOH to produce the requested documents by June 30, 2021. (*Id.* at 3.) DOH received the Subpoena on June 4, 2021, after the close of discovery. (ECF No. 85-1 at 1 ¶ 2, 5.) On June 17, 2021, DOH attorney Rebecca D.

2

McDonald notified Plaintiff via email that the DOH did "not have any documents responsive to your subpoena." (*Id.* at 7.) On June 24, 2021, Plaintiff moved to compel DOH's compliance with the Subpoena, arguing DOH did not meet its duty to conduct a reasonable search for responsive documents. (ECF No. 85.) Plaintiff attested that she was in possession of emails she exchanged with DOH and "[a] reasonable search would have found these," as well as "(likely) other internal emails and documents reflecting DOH's assertion that the position was withdrawn and reclassified, and that Ms. Kerr had been removed from the list because she no longer qualified." (ECF No. 85 at 2.) The Court granted Plaintiff's motion to compel, requiring DOH to produce "email correspondence [Plaintiff] had with WVDOH employees, written correspondence between WVDOH employees or between WVDOH employees and other entities discussing her, interview notes from her own interview(s) for a position with WVDOH, and any other documents about [Plaintiff]." (ECF No. 117 at 2.) In reaching this ruling, the Court found that the emails Plaintiff submitted reflecting communications she had with three DOH employees in 2019 "reflects that at least some of the documents [requested by Plaintiff] exist." (*Id.*) (citing ECF No. 85-1 at 8-10.)

On August 12, 2021, Plaintiff sent a letter to DOH's legal department advising that she intended to "move the court for a sanction of adverse inference, because DOH's continued non-compliance is akin to spoliation of evidence, and merits a similar penalty." (ECF No. 123-3 at 1.) Plaintiff asserted that the letter "was met with total silence by DOH[.]" (ECF No. 123 at 1.) However, on August 20, 2021, DOH filed 183 pages of documents on the record. (ECF No. 122.)

Plaintiff filed the motion *sub judice* ten days later, wherein she characterized DOH's August 20 filing as a "defective pretense at a response [that] omits essential

relevant documents covered by the subpoena and this court's order." (ECF No. 123 at 2.) Specifically, Plaintiff asserted that DOH "continues to refuse to produce" (1) a "ranking list" demonstrating her qualification for her June 6, 2019 interview with DOH; (2) notes from this interview; job applications DOH allegedly "obtained (via referral list) for two job classifications (Attorney 2 and Attorney 3);" and "correspondence with defendants and/or DOP regarding the 'HR review'" of her alleged DOH job offer. (ECF No. 123 at 2.)

The basis for Plaintiff's allegation that DOH possessed, but destroyed or withheld these documents is that, first, "such communications would be necessary to explain why [Plaintiff] was in the top ten of the previous (omitted) referral list (as policy required for her to be interviewed), but had dropped entirely off the referral list a few months later in 2019," ostensibly after her workplace suspension. (ECF No. 123 at 2.) Second, DOH's Subpoena response did not contain copies of communications between Plaintiff and DOH that Plaintiff already had in her own possession. (*Id.* at 2-3; ECF No. 135 at 2.) Finally, based upon the filing of documents on the record in this case by a DOH attorney who previously worked for "the firm that [now] represents defendant McKay," Plaintiff speculated that "defendants . . . collaborated with DOH" in resisting production of the documents. (ECF No. 123 at 1, 3.) Plaintiff "requests that this court impose a sanction of adverse inference, throughout further pretrial proceedings, and during trial by a jury instruction, directing that the documents DOH refused to produce and/or spoliated regarding Ms. Kerr shall be deemed favorable to Ms. Kerr and unfavorable to defendants, who collaborated with DOH in disobeying this court's order." (ECF No. 123 at 1).

On September 13, 2021, DOH responded to Plaintiff's motion and attached a supplemental production of documents which included a referral list that led to Plaintiff's interview, as well as handwritten notes from that interview. (ECF No. 129-1 at 60-65.)

4

DOH's Response asserted that the documents were not previously produced because "[p]ersonnel required to locate the supplemental documents were off work with medical issues, were off on vacation and the employees who were at work did not have access to the prior records system to perform the research." (ECF No. 129 at 2.)

Plaintiff replied that DOH's conduct made it "impossible to have confidence that [DOH] has now conducted a complete search." (ECF No. 135 at 1-2.) Plaintiff asserted that "email or other correspondence between WVDOH employees or between WVDOH employees and other entities discussing" her may also exist. (*Id.* at 2.) Due to the initial representation by DOH that there were no responsive documents, Plaintiff argued the delayed supplementation "is an evidentiary picture of bad faith" and "had the same effect as spoliation, because the delayed documents were too late for the summary judgment briefing, yet were pivotal to refute defendants' argument that Ms. Kerr's promotion was a figment of her imagination." (*Id.*)

Plaintiff's motion seeks an adverse-inference sanction[1] or, alternatively, that the Court "order WVDOH to permit Ms. Kerr open access to search its emails and files [via] an on-site inspection pursuant to Fed. R. Civ. P. 34(c)." (*Id.* at 3-4.)

## II. ANALYSIS

Plaintiff failed to demonstrate that an adverse-inference sanction against Defendants—based upon DOH's purported "refus[al] to produce and/or spoliat[ion]" of evidence, (*see* ECF No. 123 at 4)—is warranted under the circumstances. First, Plaintiff's

---

[1] Specifically, Plaintiff seeks an order "impos[ing] a sanction of adverse inference throughout further pretrial proceedings, and during trial by a jury instruction, directing that the documents DOH refused to produce and/or spoliated regarding Ms. Kerr were favorable to Ms. Kerr and unfavorable to Defendants, who collaborated with DOH in disobeying this court's order." (ECF No. 123 at 4.) For purposes of clarity, this sanction—whether in the form of a jury instruction at trial or otherwise—will be collectively referred to herein as an "adverse-inference sanction."

motion is facially deficient because it failed to comply with the Court's Local Rules of Civil Procedure. Furthermore, Plaintiff failed to demonstrate that the relief she seeks in her motion is available as a discovery sanction—either against the non-party DOH, or against Defendants by imputing DOH's alleged conduct to the Defendants. Finally, Plaintiff is not entitled to an adverse inference sanction against Defendants based upon their own purported "collaboration" with DOH in resisting production; even if Plaintiff could show that the evidence at issue actually existed and that Defendants had control over the evidence, Plaintiff failed to show she suffered prejudice from loss of relevant information that supported her claims, or that Defendants acted with the requisite intent or culpability to deprive Plaintiff of the use of such information in this litigation.

### A. Compliance with Local Rules

Plaintiff's motion is facially deficient because it failed to comply with the Court's Local Rules of Civil Procedure (the "Local Rules"). The Local Rules require that, "[b]efore filing any discovery motion, including any motion for sanctions . . . counsel for each *party* shall make a good faith effort to *confer in person or by telephone* to narrow the areas of disagreement to the greatest possible extent . . . [and] [i]t shall be the responsibility of counsel for the moving party to arrange for the meeting." L.R. Civ. P. 37.1(b) (emphasis added). Further, pursuant to the Local Rules, "[a] memorandum . . . must accompany the following types of motions: . . . (14) [a motion] for sanctions[.]" L.R. Civ. P. 7.1(a)(2). "If a memorandum is not submitted by this rule or by the court, the motion will be denied without prejudice." *Id.*

Here, Plaintiff's four-page motion was not accompanied by a memorandum in compliance with Local Rule 7.1(a)(2). (*See* ECF No. 123.) Additionally, while Plaintiff submitted a copy of written correspondence she directed to DOH's legal department prior

6

to moving for sanctions, there is no indication on the record that Plaintiff first met in person or by telephone with counsel for DOH or any of the Defendants' counsel to discuss compliance with the Order compelling DOH's response to Plaintiff's Subpoena. (*See* ECF Nos. 85-1, 125-3, 123-4, and 123-5). Thus, Plaintiff failed to show she met the requirement to confer with the other parties "in person or by telephone" before moving for sanctions in compliance with Local Rule 37.1(b).

While Plaintiff is proceeding pro se, her status does not alter application of the Local Rules to her filings. Pro se parties are "responsible for learning about and following all the procedures that govern the court process . . . [and] for becoming familiar with and following the Court's local rules and procedures." Pro Se Handbook, at §§ 2.3, 4. Thus, even if Plaintiff's motion did not fail on the merits as addressed *infra*, at a minimum denial without prejudice would be appropriate. L.R. Civ. P. 7.1(a)(2).

      B.      <u>Sanctions against DOH</u>

At the outset, Plaintiff's motion fails to the extent it seeks an adverse-inference sanction against DOH. Plaintiff's motion seeks sanctions pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure. (ECF No. 123 at 1.) However, it is well-settled that discovery sanctions under Rule 37 are generally not recoverable against non-parties in this context. By the plain language of Rule 37, these sanctions apply to discovery sought from a *party* under Rules 33 or 34, or against a deponent pursuant to Rule 30 or 31. Fed. R. Civ. P. 37(a)(3); *see also Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn. 1994) (finding that Rule 37 sanctions were not authorized against a non-party witness who failed to appear at a scheduled deposition as "Rule 37 by its terms" applies only to discovery sought from a party). Rather, the remedy for the unexcused failure of a *non-party* "to obey [a] subpoena or an order related to it" is governed by Rule 45 of the Federal

7

Rules. Fed. R. Civ. P. 45(g) (stating that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it"). *See also*, *e.g.*, *Jalayer v. Stigliano*, CV102285LDHAKT, 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (explaining that a non-party's unjustified failure to comply with a duly issued and served subpoena may be found in contempt).

Even if Plaintiff sought adverse-inference sanctions pursuant to Rule 45(g), a finding of contempt "do[es] not provide for a sanction comparable to the one authorized by Rule 37(b)(2)(A)[.]" *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 221 (3d Cir. 1997) (finding that order sanctioning a non-party was improper under Rule 37 or Rule 45). This includes adverse-inference sanctions. *See Nike, Inc. v. Wu*, 13-CV-8012, 2020 WL 257475, at *27 (S.D.N.Y. Jan. 17, 2020) (citing *Funnekotter v. Republic of Zimb.*, 09-CV-08168, 2011 WL 5517860, at *3 (S.D.N.Y. Nov. 10, 2011) ("[E]ven where a non-party is subject to a court-ordered deposition or subpoena, and fails to comply, the only remedies available are those for contempt, not adverse findings against the non-party")). In sum, neither Rule 37 nor Rule 45 provide a mechanism to impose an adverse-inference sanction against a non-party based upon the non-party's failure to comply with a Subpoena and/or its spoliation of evidence.[2] Accordingly, Plaintiff failed to demonstrate that the relief she seeks in the motion *sub judice* is appropriate as a sanction against DOH for its alleged conduct.

---

[2] At certain points in Plaintiff's motion, she seems to ask the Court to hold DOH liable for third-party spoliation of evidence. However, as Magistrate Judge Eifert explained, "the Court has no jurisdiction over" a claim for a non-party's "negligent or intentional spoliation of evidence" when the Plaintiff "has no pending complaint before the Court seeking damages from" the non-party. *Ayers v. Sheetz, Inc.*, 3:11-CV-434, 2012 WL 5183561, at *6 n.5 (S.D. W. Va. Oct. 18, 2012), *aff'd*, 2012 WL 5331555 (S.D. W. Va. Oct. 26, 2012). Furthermore, as Magistrate Judge Eifert explained under similar circumstances in *Ayers*, "[t]o the extent that Plaintiff seeks to hold Defendant[s] responsible for the negligent or intentional spoliation of evidence by [a non-party], no such cause of action exists." *Id.*

C.     Sanctions against Defendants for the Conduct of DOH

Plaintiff's motion also fails to the extent it seeks an adverse-inference sanction against *Defendants* based solely upon *DOH's* purported "refus[al] to produce [documents pursuant to the Subpoena] and/or spoliat[ion]" of evidence. While DOH and Defendant WVDHHR are both State agencies, DOH is a separate entity and a non-party. Imputing DOH's purported contempt to Defendants is improper when DOH—not the Defendants—was ordered to comply with the Subpoena. (*See* ECF No. 117.) In fact, the Court denied Plaintiff's motion to compel Defendant WVDHHR to respond to discovery requests as untimely.³ (ECF No. 126 at 2.) Plaintiff failed to cite any authority imposing an adverse-inference instruction against a *party* as a contempt sanction under Rule 45(g) based solely upon a *non-party's* failure to comply with a subpoena and/or spoliation of evidence. Thus, Plaintiff failed to meet her burden to show a Rule 45(g) sanction against Defendants is warranted under the circumstances.

Similarly, Plaintiff's motion also fails to the extent Plaintiff seeks to impose discovery sanctions against *Defendants* pursuant to Rule 37 solely for *DOH's* failure to comply with the Subpoena or the Court's Order requiring DOH to respond to the Subpoena. (ECF No. 117.) Rule 37 provides that "if a *party* or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," a court may direct that "designated facts be taken as established for purposes of the action, as the

---

³ To the extent, therefore, that the Subpoena sought the same documents from DOH as a runaround to its untimely request to WVDHHR, Plaintiff may not use a subpoena to circumvent the Court's discovery schedule. Rule 45 subpoenas "normally constitute discovery," and therefore may not be used as a tool to continue discovery after the end of the discovery period set forth in the Court's scheduling deadline. *Patterson v. Yeager*, 12-CV-01964, 2016 WL 8200507, at *1 (S.D. W. Va. Mar. 10, 2016) (rejecting plaintiff's request to hold subpoenaed party in contempt when, *inter alia*, subpoena was "served after the time for discovery had ended"); *CSS, Inc. v. Herrington*, 2:16-CV-01762, 2018 WL 7131556, at *2 (S.D. W. Va. Jan. 9, 2018) ("To allow a party to continue with formal discovery . . . whether in the guise of Rule 45 or any of the other discovery methods . . . after the discovery deadline unnecessarily lengthens [the] discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for trial.").

prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i) (emphasis added). "Rule 37 sanctions ensure that a party will not benefit from its non-compliance with discovery orders . . . [y]et, one party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery, absent a finding that the other party controlled the actions of the non-complying party." *Funnekotter*, 2011 WL 5517860, at *3 (citing *Letelier v. Repub. of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984)).

The Court ordered DOH—not Defendants—to comply with the Subpoena. (*See* ECF No. 117.) To this point, Plaintiff argued that DOH's actions should be imputed to Defendants. (*See* ECF No. 135 at 4) ("WVDOH's bad faith therefore establishes DHHR's bad faith, Whaley's bad faith, and McKay's bad faith, making them appropriate subjects of an adverse inference sanction."). Plaintiff's attribution of DOH's alleged conduct to the Defendants is based upon Plaintiff's characterization of arguments Defendants made in their briefing on summary judgment. Specifically, Plaintiff asserted that Defendants should be judicially estopped from denying WVDHHR is the same entity as DOH because Defendants "argued that all West Virginia agencies are collectively *a single party*, as a ploy to falsely deny that they published the defamatory letters by transmitting them to the West Virginia Division of Personnel." (ECF No. 135 at 3) (quoting ECF Nos. 83 at 10, 113 at 3-4, 112 at 18-19). Plaintiff concluded that, "[u]ntil such time as defendants withdraw their contrary argument, they are bound by it, and should be estopped from asserting the opposite position when it suits their momentary convenience." (ECF No. 135 at 3.)

Plaintiff's statement that Defendants are now contradicting arguments they made in their briefing on summary judgment is misleading and relies on a mischaracterization of the record. In their briefing, Defendants argued that summary judgment should be granted as to Plaintiff's defamation claims because Plaintiff failed to raise a genuine

10

dispute of material fact as to the elements of defamation requiring "publication" or communication of "nonprivileged" statements to a third party. *See* Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983) (describing the elements of defamation under West Virginia law). Specifically, Defendants WVDHHR and Whaley argued that WVDHHR's communication of the allegedly defamatory statements to the Division of Personnel ("WVDOP") was required by law and therefore could not have met the *prima facie* element of publication to a third party *who did not have a reasonable right to know*. *See* (ECF No. 83 at 10) (arguing that any publication by Defendant Whaley to WVDOP was a privileged communication because it is "a State agency to whom all disciplinary matters *must* be reported [under] W. Va. C.S.R. § 143-1-12.3a"); (ECF No. 113 at 3-4) (arguing that Plaintiff's defamation claim failed because any publication by Defendant Whaley to WVDOP was made pursuant to the West Virginia Code of State Rules and therefore was not made "to a third party who did not have a reasonable right to know" under *Crump*, 320 S.E.2d 70); (ECF No. 112 at 19) (arguing that "the statements would still need to be published to a third party without a reasonable right to know in order to be actionable as defamation," and that "[a]s to DOP, DHHR is required by law to transmit suspension letters to DOP [under] W.Va. C.S.R. § 143-1-12.a"). Defendants each denied in their briefing that they communicated any allegedly defamatory statement to DOH.

Defendant WVDHHR did argue that "all employees of a corporation acting within the scope of their employment [are treated] as one entity for agency purposes, such that a purely intracorporate communication does not constitute an actionable 'publication.'" (ECF No. 112 at 19.) However, WVDHHR expressly stated that this argument applied to "publication" of the Suspension Letter to other employees *within WVDHHR*. (*Id.*)

11

(applying intracorporate communication argument "[w]ith regard to those within DHHR").

In sum, while WVDOP, DOH, and Defendant WVDHHR are all State agencies, Plaintiff failed to set forth any evidence or authority showing that they should be treated as a single entity under the circumstances; further, Plaintiff failed to demonstrate that any of the Defendants ever made this assertion and should therefore be estopped from arguing that WVDHHR is a separate entity. Moreover, Plaintiff failed to cite any authority imposing an adverse-inference instruction against a *party* as a discovery sanction under Rule 37 based solely upon a *non-party's* failure to comply with a subpoena and/or spoliation of evidence. Accordingly, Rule 37 discovery sanctions are not appropriate against Defendant WVDHHR for the purported non-compliance by DOH—a separate entity and a non-party.

D. <u>Sanctions against Defendants for their Complicity in the Conduct of DOH</u>

Finally, Plaintiff failed to demonstrate that she is entitled to the relief sought in her motion based upon Defendants' own conduct. A review of the Subpoena reveals that discovery sanctions against Defendants pursuant to either Rule 45(g) or Rule 37(b)(2) are improper. Finding Defendants in contempt pursuant to Rule 45(g) is improper because Plaintiff's Subpoena was neither addressed to, nor properly served upon, the Defendants. The Subpoena was addressed solely to DOH, and DOH was the sole entity responsible for compliance under the Rule. (ECF No. 85-1 at 3.) Further, the Federal Rules require that "a notice and a copy of the subpoena must be served on each party . . . before it is served on the person to whom it is directed" if the subpoena "commands the production of documents." Fed. R. Civ. P. 45(a)(4). The Rules expressly provide that contempt for a person's failure to obey a subpoena or an order related to it applies only when the person

12

"ha[s] been served[.]" Fed. R. Civ. P. 45(g). Here, the record does not reflect—and Plaintiff does not represent—that she provided Defendants with prior notice of her intent to subpoena documents from DOH or a copy of the Subpoena as required by Rule 45 before she proceeded with serving the Subpoena on DOH. (*See*, *e.g.*, ECF Nos. 85-1 at 1 and 123 at 1.) As a result, a sanction pursuant to Rule 45(g) is not only improper, but would be inequitable when Defendants were foreclosed from objecting to the Subpoena before it was served on DOH.

Imposing sanctions on Defendants pursuant to Rule 37(b)(2) is likewise improper because Defendants did not "fail[] to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2). The Court's July 19, 2021 Order granting Plaintiff's motion to compel DOH to respond to the Subpoena expressly applied to DOH only. (ECF No. 117 at 3) (stating that "WVDOH is ordered to fully respond to the subpoena").

Plaintiff's motion also sought an adverse-inference sanction pursuant to the Court's "inherent power" to sanction a party's spoliation of evidence. (*See* ECF No. 123 at 1) (alternatively moving for sanctions pursuant to "this court's inherent power.") However, Plaintiff did not demonstrate any evidence of prejudice based upon loss of the alleged evidence, and merely offered conclusory speculation regarding Defendants' purported control over the evidence. Likewise, rather than demonstrating evidence of Defendants' requisite culpable state of mind, Plaintiff merely speculated as to Defendants' purported "complicity" or "collaborat[ion]" with DOH in spoliating evidence.

Certainly, an adverse-inference sanction based upon spoliation may be imposed through the court's inherent authority "to control the judicial process and litigation." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "Sanctions may be

imposed to preserve the orderly administration of justice and to redress conduct which abuses or undermines the integrity of the judicial process." *Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, 2:15-CV-07959, 2018 WL 1370862, at *4 (S.D. W. Va. Mar. 16, 2018) (citing *In re Ethicon, Inc.*, 299 F.R.D. 502, 511 (S.D. W. Va. 2014)). While "[t]he court has broad discretion when selecting a sanction for spoliation, . . . the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Travelers*, 2018 WL 1370862, at *5 (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). However, "[b]ecause the [court's] inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary." *Shaffer*, 11 F.3d at 461.

Generally, a party seeking sanctions for spoliation pursuant to the Court's inherent authority carries the burden to prove the following elements:

(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered;
(2) the destruction or loss was accompanied by a "culpable state of mind;" and
(3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Travelers*, 2018 WL 1370862, at *7 (quoting *In re Ethicon*, 299 F.R.D. at 511-12).[4] With respect to the relevance element, "[t]he concept of relevance includes a second prong; that

---

[4] A similar test applies pursuant to Rule 37 when the evidence allegedly withheld or spoliated constituted electronically-stored information ("ESI"). (*See* ECF No. 123 at 2.) Borrowing from the first general element listed *supra*, the ESI analysis applies when ESI "is lost because a party failed to take reasonable steps to preserve it[.]" *In re: Ethicon, Inc.*, 2:12-CV-00497, 2016 WL 5869448, at *2 (S.D.W. Va. Oct. 6, 2016) (citing Fed. R. Civ. P. 37(e)). Borrowing again from the second and third elements, under the ESI test the Court may impose sanctions in these circumstances by finding either "that the party acted with the intent to deprive another party of the information's use in the litigation" or "prejudice to another party from loss of

14

being, the prejudice flowing from the loss of evidence." *In re Ethicon*, 299 F.R.D. at 522. "[S]peculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." *Id.* at 522-23.

Here, Plaintiff failed to demonstrate evidence to satisfy any of these elements. First, assuming without deciding that Plaintiff demonstrated the evidence existed, Plaintiff did not offer any facts to support a finding that any of the Defendants had control over the evidence. To the contrary, Plaintiff's motion acknowledged that it was DOH who purportedly "never conducted a proper search," was ordered to produce the evidence at issue, and "continues to refuse to produce" the evidence. (ECF No. 123 at 2.) Plaintiff offered no more than unsupported speculation in support of her argument that "defendants . . . collaborated with DOH" in resisting production of the documents. (ECF No. 123 at 1, 3.)

The only link Plaintiff makes between DOH and Defendants is her own conjecture that DOH desired "to help [Defendants] defeat Ms. Kerr." (*Id.* at 2-3.) Plaintiff argued that DOH's August 20, 2021 production of 183 pages of documents "fake[d]" its compliance "by producing documents for other interviews that did not mention Ms. Kerr" and "were patently non-responsive." (ECF No. 135 at 2.) Plaintiff argued that this "fake" production "is an evidentiary picture of bad faith . . . [which] helped defendants create the false illusion that Ms. Kerr fantasized her whole WVDOH job interview and offer." (*Id.*). However, Plaintiff pointed to no evidence of any conduct by Defendants to "collaborate" with DOH in this "fake" production other than her belief that the absence of such evidence strengthens Defendants' position on the issue of Plaintiff's alleged damages. (*See id.*) Such

---

the information[.]" *Id*. Plaintiff's motion fails under the ESI analysis for the same reasons it fails under the inherent-authority analysis described herein.

conjecture fails to establish that Defendants had any control over the evidence at issue. *In re Ethicon*, 299 F.R.D. at 511-12.

For these same reasons, Plaintiff's unsubstantiated "collaboration" theory failed to demonstrate any evidence that Defendants acted with the requisite intent or culpable state of mind. The only factual evidence Plaintiff pointed to in support of her "collaboration" theory[5] was attorney Travis Haley's entry of appearance on behalf of DOH in this case and his filing of DOH's August 20, 2021 response to the Court's Order. (ECF No. 122.) Plaintiff argues that "a case for bad faith by an individual defendant appears against [Defendant] McKay" because attorney Haley "was previously employed" by the law firm that currently represents Defendant McKay "and retained such close ties to that firm that he has not changed his . . . email address on Pacer in the past three years." (ECF No. 135 at 4.)

The fact that one of the attorneys for DOH previously worked for the law firm that now represents Defendant McKay, on its own, does not establish evidence of Defendants' purported collusion with DOH to deprive her of the evidence at issue. Plaintiff made no allegation or showing that attorney Haley worked for his previous employer during any relevant time period in this case, and made no allegation or showing of a conflict of interest. Without more, Plaintiff's conclusory, unsubstantiated speculation falls flat. Because she offered no more than conclusory speculation regarding Defendants' purported "complicity" with the DOH, with no supporting factual evidence to substantiate

---

[5] Apart from Defendants' own conduct, Plaintiff's argument that DOH's alleged control or culpability should be attributed to the Defendants falls flat. As set forth *supra*, Plaintiff's statement that Defendants should be "judicially estopped" from denying that they are "the same party as WVDOH" based upon arguments the Defendants made in their briefing on summary judgment, (*see* ECF No. 135 at 3), is misleading and relies on a mischaracterization of the record.

this belief, Plaintiff failed to demonstrate that Defendants acted with the requisite "culpable state of mind." *In re Ethicon*, 299 F.R.D. at 511-12.

Finally, Plaintiff is not entitled to an adverse inference jury instruction against Defendants based upon their purported "collaboration" with DOH in resisting production because Plaintiff did not meet her burden to show she suffered prejudice from loss of relevant information that supported her claims. Plaintiff argued that DOH's "delay [in producing documents] had the same effect as spoliation, because the delayed documents were too late for the summary judgment briefing[.]" (ECF No. 135 at 2.) However, Plaintiff did not indicate to the Court prior to the dispositive motion deadline that additional time was needed to complete briefing or that her ability to adequately respond to Defendants' dispositive motions would be impaired by DOH's compliance with the Subpoena. *CSS, Inc. v. Herrington*, 2:16-CV-01762, 2018 WL 7131556, at *3 (S.D. W. Va. Jan. 9, 2018) (finding that compelling compliance with untimely subpoena was inappropriate when Plaintiff failed to "argue lack of opportunity" to have timely raised the issue).

Even if this issue had been timely raised, Plaintiff nevertheless failed to demonstrate prejudice by identifying specific, *relevant* gaps or weaknesses in her case "that exist[s] because critical evidence was lost or destroyed" by Defendants. *In re Ethicon*, 299 F.R.D. 502, 526 (S.D. W. Va. Feb. 4, 2014) (*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (explaining that an adverse inference instruction requires the plaintiff to demonstrate that the party against whom the instruction is sought "destroyed relevant evidence" and that "the destroyed evidence would have been favorable to her")).

Assuming without deciding that the evidence at issue existed and was destroyed, Plaintiff offered only speculation as to its contents. (*See, e.g.*, ECF No. 135 at 2) (stating

17

that Plaintiff cannot tell what was omitted). "[S]peculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." *In re Ethicon*, 299 F.R.D. at 522-23. Plaintiff failed to assert that the allegedly spoliated evidence would support the elements of Plaintiff's claims that were the basis for Defendants' summary judgment motions—particularly pretext as to Plaintiff's Title VII claims, or falsity as to Plaintiff's defamation claims. (*See* ECF No. 138.)

Plaintiff argued that "the delayed documents" supplemented by DOH "were pivotal to refute defendants' argument that Ms. Kerr's promotion was a figment of her imagination [and] . . . show that Ms. Kerr accurately described how defendants' retaliatory lies cost her a lucrative promotion and led to large financial damages." (ECF No. 135 at 2.) However, such evidence is irrelevant to the extent it would support a finding of an adverse employment action under Title VII, because this element is not in dispute. Likewise, such evidence is irrelevant to the extent it would support the damages elements of Plaintiff's claims, because Plaintiffs' damages were not at issue in the parties' dispositive motions. Nor was the question of Plaintiff's alleged job offer by DOH—the "promotion" from her position with WVDHHR—relevant to Defendants' arguments in support of summary judgment. Plaintiff failed to argue that the alleged documents would have supported a finding of pretext under the *McDonnell Douglas* framework as to her Title VII claims, or, as to her defamation claims, would have supported a finding that Defendants' statements were false. (*See* ECF No. 138.)

In sum, Plaintiff offered only unsubstantiated speculation regarding her assertion of Defendants' purported "complicity" with the DOH, or her assertion that the allegedly missing evidence would have bridged relevant gaps or weaknesses in her case. Further, because she failed to demonstrate or even assert that the missing evidence would have

18

answered Defendants' challenge to her *prima facie* case for defamation or the pretext element of her Title VII claims on summary judgment, Plaintiff failed to demonstrate prejudice. *In re Ethicon*, 299 F.R.D. at 511-12. Thus, Plaintiff failed to demonstrate a reasonable basis to sanction Defendants.[6]

### III. CONCLUSION

Accordingly, for the reasons set forth herein, Plaintiff's "*Motion for Sanctions against DOH for Spoliation of Evidence, and Against Defendants for Complicity in the Spoliation*" (ECF No. 123) is **DENIED**.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 15, 2022

Dwane L. Tinsley
United States Magistrate Judge

---

[6] Plaintiff's alternative request for an "on-site inspection pursuant to Fed. R. Civ. P. 34(c)," (*see* ECF No. 135 at 3), is likewise unavailing for the same reasons set forth herein and because the request was not timely under the circumstances.

19