```
         UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA
                AT CHARLESTON
```

**LISA MARIE KERR,**

        Plaintiff,

v.                                    Civil Action No. 2:20-cv-00190

**SHANNON MCKAY, LANCE WHALEY,**
**and WEST VIRGINIA DEPARTMENT**
**OF HEALTH AND HUMAN RESOURCES,**

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are three motions for summary judgment.  First is the motion of defendant Shannon McKay ("McKay"), filed June 21, 2021.  ECF No. 74.  Second is the motion of defendant West Virginia Department of Health and Human Resources ("DHHR"), filed June 23, 2021.  ECF No. 78.  And third is the motion of defendant Lance Whaley ("Whaley"), filed June 23, 2021.  ECF No. 82.  Additionally, pending is a motion by plaintiff Lisa Marie Kerr ("Kerr") for leave to file a supplemental affidavit, filed September 2, 2021.  ECF No. 125.

This action was previously referred to Dwane L. Tinsley, United States Magistrate Judge, for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order in this district.  On February 4, 2022, the magistrate judge submitted his Proposed

Findings and Recommendation ("PF&R"), wherein he "recommends that [McKay's, DHHR's, and Whaley's] motions for summary judgment be granted." PF&R 24, ECF No. 138 (emphasis and citations omitted). Separately, on February 2, 2022, the magistrate judge denied Kerr's motion for leave to file a supplemental affidavit. Order Denying Suppl. Aff., ECF No. 137. Plaintiff Lisa Marie Kerr ("Kerr") timely objected to the magistrate judge's decision and PF&R on February 16, 2022. Kerr Obj., ECF No. 140. DHHR and Whaley responded on March 2, 2022, and McKay joined in Whaley's response that same day. ECF Nos. 141-43.

## I. Background

Kerr, a licensed attorney proceeding pro se, instituted this action on February 18, 2020, in the Circuit Court of Kanawha County. ECF No. 1-1. Whaley removed the action to this court on March 17, 2020. ECF No. 1. At all relevant times, Kerr was employed by DHHR at its Lincoln County office as a Social Service Worker II in the Adult Services department. Am. Compl. ¶ 12, ECF No. 30. McKay and Whaley are DHHR managers and supervisors and had supervisory authority over Kerr. See id. ¶¶ 14-15.

This action arises out of an alleged discriminatory, retaliatory, and defamatory campaign by DHHR, McKay, and Whaley against Kerr stemming from a "distaste for non-gender-conforming lesbians" like her. Id. ¶ 2; see also id. ¶¶ 2-7 (summarizing claims). See generally id. ¶¶ 24-92 (full statement of claims). After the court's memorandum opinion and order of December 29, 2020, ECF No. 31, Kerr's causes of action against the defendants are as follows: sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against DHHR and defamation under West Virginia common law against DHHR, McKay, and Whaley.

## II. Standard of Review

Federal Rule of Civil Procedure 72(b)(3) provides that, regarding "a pretrial matter dispositive of a claim" decided by the magistrate judge, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." See also 28 U.S.C. § 636(b)(1). That is, any part of the magistrate judge's disposition to which a party has "file[d] specific written objections." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 363(b)(1). Otherwise, the magistrate judge's disposition is reviewed for clear error. Fed. R. Civ. P. 72(b) advisory

committee's notes to 1983 addition ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); see also Twisdale v. Paulson, 595 F. Supp. 2d 686, 689 (S.D. W. Va. 2009).

For non-dispositive matters decided by the magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

### III. Discussion

Over a thirty-six-page objection (not including attached exhibits and incorporation of an affidavit containing sixty-eight exhibits), produced in a proportionally spaced typeface in a point size less than twelve,[1] Kerr attempts to relitigate the entire matter as though it had not been the subject of the magistrate judge's review. Compare Kerr Obj.,

---

[1] Local Rules of Civil Procedure 7.1(a)(2) and 7.1(a)(4) require memoranda to be no more than twenty pages and, if a proportionally spaced typeface is used, produced in a point size of twelve or higher. It is unclear whether these rules apply to PF&R objections.

ECF No. 140, with Kerr Resps. to Summ. J., ECF Nos. 94-95, 97, and Kerr Aff., ECF No. 93.

Typically, the specific requirements of Rule 72(b) and 28 U.S.C. § 636(b)(1) prohibit general objections like Kerr's. "[M]erely reiterating the same arguments presented to a magistrate judge does not constitute a specific objection warranting de novo review." Demarest v. Horry Cnty. Police Dep't, No. 4:18-cv-03010-SAL, 2020 WL 4506273, at *1 (D.S.C. Aug. 5, 2020) (citing Durkee v. C.H. Robinson Worldwide, Inc., 765 F. Supp. 2d 742, 747 (W.D.N.C. 2011), aff'd sub nom. Durkee v. Geologic Sols., Inc., 502 F. App'x 326 (4th Cir. 2013)). The Southern District of West Virginia explains the reason for the rule as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

Graham o.b.o. Graham v. Berryhill, No. 1:16-cv-03837, 2017 WL 4251825, at *2 (S.D. W. Va. Sept. 26, 2017) (quoting Howard v. Sec'y of Health and Hum. Servs., 932 F.2d 505, 509 (6th Cir. 1991)); see also United States v. Midgette, 478 F.3d 616, 622

(4th Cir. 2007) (adopting Howard and decisions from the 3d, 7th, and 10th Circuits).

The case law is replete with district court decisions declining de novo review for PF&R objections when the objector simply repackaged evidence and arguments already presented to the magistrate judge. See, e.g., Lomeli-Garcia v. Ryan, No. CV-19-08199-PCT-DWL, 2020 WL 2520183, at *3 (D. Ariz. May 18, 2020) (declining de novo review where objector "simply attempt[ed] to repackage and reassert the same arguments he presented to the magistrate judge"); Wiltz v. New York Univ., No. 1:19-cv-03406-GHW, 2020 WL 614658, at *3 (S.D.N.Y. Feb. 10, 2020) ("Most of Plaintiff's initial objections repackage the same arguments he has unsuccessfully presented to . . . the magistrate judge . . . . Such objections warrant only clear error review."); Williams v. Town of Hempstead, No. 16-cv-1992 (ADS)(AYS), 2019 WL 1403114, at *3 (E.D.N.Y. Mar. 28, 2019) ("An attempt to rehash original arguments, which were already considered by the magistrate judge, in what is effectively a sur-reply, constituted an improper objection."); Draper v. Univ. of Tenn., No. 08-1125, 2010 WL 11493685, at *1-2 (W.D. Tenn. June 7, 2010) (declining de novo review where the objector "essentially ha[d] re-alleged and expanded every single claim she made" before the magistrate judge); Fesseha v. Bd. of Regents of the Univ. Sys.

6

of Ga., No. 1:06-CV-1734-ODE, 2008 WL 11407411, at *5 (N.D. Ga. Mar. 11, 2008) (declining de novo review where the objector "simply repackage[d] the evidence already presented to" the magistrate judge on the issue of whether "there [was] sufficient evidence from which a jury could infer discrimination").

     Nevertheless, the court considers Kerr's contention that the magistrate judge "disregard[ed] . . . evidence and testimony" that allegedly demonstrate a triable issue on whether the DHHR's reasons for disciplining her were pretexts for discrimination and retaliation.  Kerr Obj. 2.  To prove a case for unlawful discrimination under Title VII, a plaintiff may proceed under the familiar McDonnell Douglas burden-shifting framework.  Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010).  The final step of the framework requires the plaintiff "to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  "The final pretext inquiry 'merges with the [plaintiff's] ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (first alteration added) (quoting Burdine, 450 U.S. at 256). In other words, the heart of a Title VII case is "whether the

7

plaintiff was the victim of intentional discrimination" notwithstanding labels or methods of proof.  Id. at 294-95 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)).

To begin, the court considers Kerr's broader argument that the magistrate judge ignored her affidavit.  See id. at 2-25.  To be sure, the PF&R does not directly cite Kerr's affidavit.  See generally PF&R.  However, the PF&R contains thorough citation to Kerr's amended complaint and response to DHHR's summary judgment motion.  See generally id.  Both contain a nearly identical account of events as her affidavit, compare Am. Compl. and Kerr. Resp. to DHHR Summ. J., ECF No. 94, with Kerr. Aff., and her response brief heavily relies on and quotes the affidavit, see Kerr Resp. to DHHR Summ. J.  In addition, the PF&R references the relevant portions of Kerr's administrative grievance board hearing submitted into evidence by Kerr.  See PF&R 1-8, 12-24.  The magistrate judge's review of the record was thorough and well-considered, and Kerr's objection concerning the magistrate judge's purported failure to consider her affidavit is meritless.

Next, the court turns to Kerr's underscoring of a few events as demonstrative of pretext: (1) "the vehicle incident" of March 26, 2019; (2) "the Reachback Coaching;" (3) "th[e]

DHHR's so-called EEO [equal employment office] process;" (4) "the Suspension Letter's claim that multiple agencies 'refused to work with' Ms. Kerr;" and (5) an alleged "erroneous[] reli[ance] on defendants' internal state administrative findings."  See Kerr Obj. 4, 11-13, 15.  Kerr contends that the magistrate judge overlooked this evidence, and that a proper consideration of the facts shows a triable issue on the DHHR's motive for disciplining her with a two-week suspension on August 29, 2019, a few months after her first grievance had been heard.

First, Kerr claims that following a March 26, 2019, altercation between her and two coworkers over who signed out a state vehicle, the DHHR singled out her, an "LGBT employee," for reprimand rather than the "two similarly-situated non-LGBT employees."  See id. at 4-6; see also id. at 4-11, 17-20, 27-28.  As the magistrate judge noted, however, Kerr concedes that she "verbally argued with two non-LGBT employees who were also verbally arguing with me . . . . All three of us raised our voices."  Id. at 4-5 (quoting Kerr Aff. ¶ 11).  Kerr admits that she and her coworkers shouted at each other.  Kerr. Aff. ¶ 14.[2]

---

[2] Confusingly, Kerr denies shouting at her coworkers despite her affidavit plainly stating that she did so.  Compare Kerr Obj. 19 with Kerr Aff. ¶ 14.

As proof of unlawful discrimination stemming from the undisputed two-way confrontation, however, Kerr points to McKay's immediate reprimand of her and not her coworkers. See Kerr Obj. 6. According to Kerr, McKay did not witness the argument, and Kerr's position is that McKay singled her out for being the only LGBT employee involved. See id. But before (and after) the altercation over the state vehicle, Kerr had a thoroughly documented history of interpersonal disputes and heated confrontations with coworkers and even third parties. See, e.g., DHHR Mot. Summ. J., Exs. 4-10, 12-15, 17, 19, 26, 39, ECF Nos. corresponding to exhibit numbers.

Nevertheless, Kerr states that while arguing with McKay over who was at fault for the vehicle dispute, she believes McKay "dramatiz[ed] a directive that [she] become more feminine, if [she] wanted anyone in the office to listen to [her] and respect [her]." Kerr Obj. 7 (quoting Kerr Aff. ¶ 26); see also id. at 8. And Kerr states that when she accused McKay of discriminating against her, McKay "retaliat[ed]" against her by sending her home for the day on the day of the dispute. Id. (quoting Kerr Aff. ¶ 28).

Kerr does not appear to contest that she had a lengthy record of unprofessional conduct -- precisely the nature of her conduct for which McKay reprimanded her over the vehicle

argument. Indeed, Kerr avers that McKay admonished her, "you know how aggressive you are. You're being aggressive right now." Id. (quoting Kerr Aff. ¶ 25). Kerr's speculation about McKay's body language and intonation during the exchange does not transform Kerr's documented record of confrontation into code for invidious discrimination, especially compared to the overwhelming weight of evidence demonstrating that Kerr's undisputed misconduct during the vehicle incident was in line with her past behavior. Likewise, Kerr's speculation that she was sent home not for yet another interpersonal confrontation, but for gender stereotyping, is insufficient to show pretext for retaliatory intent. See generally Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

Second, Kerr argues that the DHHR's "retaliatory motive and pretext" is demonstrated by that which Kerr labels as the "Reachback Coaching" performance appraisal. Kerr Obj. 11. One of Kerr's supervisors, Julia Morton, issued the so-called Reachback Coaching on April 2, 2019, "days after Ms. Kerr filed her first grievance over McKay's actions during the vehicle

incident." Id. According to Kerr, the Reachback Coaching "reached back six months to recharacterize prior interactions that had not been previously treated as infractions," that is, the Reachback Coaching accused Kerr of prior misconduct where no such misconduct occurred or was documented. See id. As proof, Kerr asks the court to compare the April 2, 2019, Reachback Coaching with the February 22, 2019, handwritten note by a supervisor appraising Kerr's performance and an April 6, 2019, email written by Kerr disagreeing with the Reachback Coaching. Id.

The February 22, 2019, handwritten note and Kerr's April 6, 2019, email prove precisely the opposite. The Reachback Coaching, while praising Kerr's performance in some respects, provides that

> [Kerr's] performance in the public needs to improve. She has received numerous complaints about her behavior. Two different hospitals called Central Intake requesting a supervisor. [Kerr] and Social Service Supervisor have talked regarding the complaints. She has also had arguments with other co-workers regarding travel and state cars.
>
> . . .
>
> Lisa and Social Service Supervisor have spoken numerous times about her tact and she has agreed to work on it when dealing with the public and co-workers.

Reachback Coaching, ECF No. 93-42. Likewise, the February 22, 2019, handwritten note by a supervisor establishes that the

12

supervisor "spoke with [Kerr] about her behavior when she is in public. I explained that, I have had numerous complaints about her behavior when she speaks with others such as CAMC, the Lincoln courthouse, and Teddy (DHHR tech)." Feb. 22, 2019, Note, ECF No. 93-36. And Kerr's April 16, 2019, email admits that she had a "November evaluation" where another supervisor "mentioned that certain unnamed persons had alleged I had a 'lack of tact.'" Apr. 16, 2019, Email, ECF No. 93-31. Kerr noted that she agreed with the evaluation. Id. Consequently, the evidence cited establishes that the Reachback Coaching was consistent with her prior behavior and performance reviews. Kerr's mischaracterization of the evidence is insufficient to overcome summary judgment.

Third, Kerr claims that the magistrate judge "overlooked evidence that DHHR's so-called EEO process was misused to retaliate against Ms. Kerr." Kerr Obj. 12. In short, Kerr contends that the internal grievance process that she invoked is evidence of retaliation because the grievance did not go her way. See id. at 12-13. Such unfavorable adjudicatory outcomes cannot be regarded as competent evidence of discrimination, and Kerr's argument otherwise is without merit.

Fourth, Kerr claims that pretext is shown by the DHHR's allegedly false claim in Kerr's suspension letter that "multiple agencies" refused to work with her. Id. at 13-15. As the magistrate judge correctly observed, however, Kerr takes an overly literal interpretation of the suspension letter. PF&R 20-21. The suspension letter provides, inter alia, that the DHHR had received "at least two complaints from hospitals (St. Mary's and CAMC Women and Children's), a complaint from the Lincoln County Courthouse, and a complaint from the West Hamlin Police Department," who "[a]ll had the common complaint that you were rude and aggressive, and they have requested to not to work with you." Suspension Letter, ECF No. 93-7. Additionally, the suspension letter details that "[a]n official complaint was filed by the trainer who was administering the Active Shooter Training due to your rude and disruptive behaviors on May 29, 2019," the trainer being "an officer of the West Virginia State Police." Id. As described above, the DHHR received numerous complaints from third parties about Kerr's behavior, albeit not literally from St. Mary's Hospital itself, for example, but from a hospital employee on behalf of a doctor who worked there. Kerr's attempt to sidestep the record evidence -- which she does not dispute or challenge with competing evidence -- is insufficient to overcome summary judgment.

14

Fifth, Kerr takes issue with the magistrate judge's quotation of an Administrative Law Judge who found on June 3, 2021, after four days of hearings, that the DHHR "had legitimate non-discriminatory reasons for suspending [Kerr] based upon violations of specific policy provisions."[3] PF&R 12 (alteration added) (quoting ECF No. 78-1 at 22). But the magistrate judge did not simply adopt the Administrative Law Judge's finding without his own independent analysis, despite quoting it. Rather, the magistrate judge carefully considered the facts presented and concluded that Kerr had failed to raise a genuine issue of material fact suitable for trial. Kerr's fifth and final argument is meritless.

In sum, Kerr has a long, documented history of confrontations with coworkers and others. In view of that overwhelming evidence, and in consideration of Kerr's speculative and often misleading claims to the contrary, no reasonable jury could conclude that the DHHR intentionally discriminated against Kerr in violation of Title VII.

Regarding her defamation claim against the DHHR, McKay, and Whaley, Kerr claims that "[t]he PF&R erred in taking

---

[3] It is understood that an appeal of the Administrative Law Judge's decision is currently pending in the Circuit Court of Kanawha County, West Virginia.

away from the jury the disputed factual issues of truth/falsity and good/bad faith." Kerr Obj. 30. Kerr relies on the overly literal interpretations and mischaracterizations of the evidence discussed above. See id. at 30-31. For instance, Kerr again relies on the fourth event discussed above: that she claims it is false that "multiple agencies" refused to work with her. Id. at 30. Again, Kerr does not seem to dispute that such complaints were received, but only apparently that the literal agencies themselves, or perhaps an official resolution on behalf of the agencies, did not submit them. That is not enough to overcome summary judgment on her defamation claim. See Syl. Pt. 6, Chafin v. Gibson, 578 S.E.2d 361 (W. Va. 2003) ("The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").

Lastly, the court finds that the magistrate judge's decision not to grant Kerr leave to file her supplemental affidavit was neither clearly erroneous nor contrary to law.

Kerr's supplemental affidavit sought to add additional portions of, and commentary on, her administrative grievance hearing beyond the portions of audio she had already timely submitted. See ECF No. 125 at 2. The magistrate judge explained that Kerr sought to submit the supplemental affidavit "over three months after the close of discovery, nearly two months after [Kerr's] response in opposition to [the defendants'] summary-judgment motions was due, and fifty days after the Court's deadline for briefing on dispositive motions closed." Order Denying Suppl. Aff. 4. Regarding the audio recordings of the grievance board hearing already in Kerr's possession, the magistrate judge noted that Kerr had previously "made no representation to the Court that the audio format was difficult or cumbersome to review, that the audio files were incomplete, or that the audio files otherwise did not reflect the full four-day-plus testimonial record of the administrative proceedings before the [grievance board]." Id. at 3 (quotation marks omitted). Thus, the magistrate judge's decision to deny Kerr leave to file her supplemental affidavit was not clear error or contrary to law. See Matheny v. L.E. Myers Co., 2:16-cv-09304, 2018 WL 1095583, at *1 (S.D. W. Va. Feb. 26, 2018) (stating factors to consider when addressing a motion to supplement a summary judgment record with additional evidence).

## IV. Conclusion

Based on the foregoing, it is accordingly ORDERED that:

1. The PF&R be, and hereby is, adopted and incorporated herein;

2. DHHR's, McKay's, and Whaley's motions for summary judgment be, and hereby are, granted;

3. Kerr's motion for leave to file her supplemental affidavit be, and hereby is, denied; and

4. This action be, and hereby is, dismissed and stricken from the docket of the court.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: March 31, 2022

John T. Copenhaver, Jr.
Senior United States District Judge